(110 App. Div. 691.)

BOWERS v. OCEAN ACCIDENT & GUARANTEE CORPORATION, Limited.

(Supreme Court, Appellate Division, First Department. January 26, 1906.)

1. FRAUDS, STATUTE OF—SUFFICIENCY OF WRITING—RECITALS AS TO CONSIDERATION.

A written instrument, the language of which warrants the inference that the consideration rests upon mutual promises, satisfies the statute of frauds.

[Ed. Note.—For cases in point, see vol. 23, Cent. Dig. Frauds, Statute of, §§ 214–221.]

2. SAME—IDENTIFICATION OF SUBJECT-MATTER—PAROL EVIDENCE.

While a memorandum to satisfy the statute of frauds must contain what is necessary to show the contract between the parties, yet the property mentioned therein may be ascertained and located by extrinsic evidence, especially where the memorandum refers thereto.

[Ed. Note.—For cases in point, see vol. 23, Cent. Dig. Frauds, Statute of, § 375.]

3. FRAUDS, STATUTE OF—SUFFICIENCY OF MEMORANDUM—REFERENCE TO ANNEXED PAPERS.

A contract for the sale of the good will of an insurance company and of a list of its risks in consideration of an agreement by the buyer to pay the seller a percentage on premiums received by it from any of the then policy holders of the seller, according to a list which the contract recited was annexed thereto, was not rendered obnoxious to the statute of frauds by reason of failure to annex the list to the written contract where the list was made out by the seller and delivered to and accepted by the buyer as a separate paper.

[Ed. Note.—For cases in point, see vol. 23, Cent. Dig. Frauds, Statute of, §§ 262–264.]

4. CORPORATIONS—ULTRA VIRES—ESTOPPEL TO ASSERT.

Where a contract by an insurance company to sell its good will and to turn over a list of its policies to another company was fully performed by the seller and the buyer obtained the full benefit thereof by reinsuring a large proportion of the seller's risks, the buyer was estopped to deny the seller's power to make the contract.

[Ed. Note.—For cases in point, see vol. 12, Cent. Dig. Corporations, §§ 1565, 1566.]

5. GOOD WILL—SALE—BREACH OF CONTRACT.

A contract by an insurance company to transfer its good will and a list of its policies to another company, which recited that the seller was about to discontinue its business and to wind up its affairs, was not broken by the insolvency of the seller within a few months after the making of the contract and the appointment of a receiver for its assets especially where, prior to the judicial declaration of the seller's insolvency, the buyer had obtained all the benefit which could accrue to it under the contract.

6. Appeal—Harmless Error—Admission of Evidence.

In an action on a contract for the sale of the good will, and of a list of the policies of an insurance company in consideration of an agreement by the buyer to pay a percentage on such risks of the seller as should be reinsured by the buyer, the admission in evidence of an affidavit of the buyer's manager to a list of policies issued by it, which list was admitted in evidence in pursuance of a stipulation requiring it to be verified, was harmless, conceding that it was technically not admissible as part of the list, where the buyer's manager was at the time under an order of examination.

7. Trial—Submission of Particular Issues—Requisites of Motion.

Where more than one question of fact is involved in an action, and on the close of the evidence each party asks for a directed verdict, a motion by the unsuccessful party for the submission of the case to the jury, made without stating any particular questions of fact, which he desires to have submitted, may be denied.

McLaughlin, J., dissenting.

Appeal from Trial Term, New York County.

Action by John M. Bowers, as receiver of the Mercantile Credit Guarantee Company of New York against the Ocean Accident and Guarantee Corporation, Limited. From a judgment for defendant and from an order denying a new trial, defendant appeals. Affirmed.

Argued before O'BRIEN, P. J., and McLAUGHLIN, INGRAHAM, LAUGHLIN, and HOUGHTON, JJ.

Laurence Arnold Tanzer, for appellant.

W. H. Van Benschoten, for respondent.

HOUGHTON, J. The Mercantile Credit Guarantee Company, engaged in the business of insuring merchants against bad debts, on the 23d of March, 1897, entered into a contract with the defendant, in writing, dated the 16th day of that month, whereby it agreed to and did sell to the defendant its good will, and agreed to turn over to it a list of all policies then in force, and such books pertaining thereto as the defendant might from time to time require, and to do all in its power to induce its present policy holders to insure in the defendant company which was engaged in business of a like character. As consideration therefore the defendant agreed to pay to the mercantile company 5 per cent. of the gross premiums received upon all policies issued by it within two years from the date of the agreement, to any of the then policy holders of the mercantile company. A list of the existing policy holders of the mercantile company was furnished to the defendant's representative, and policy ledgers, and other books and papers pertaining to such policies were delivered to the defendant. Notice was given as provided by the contract, to the policy holders of the mercantile company, that its business had been turned over to the defendant, and urging continuance of insurance with it.

The agreement recited that the mercantile company was about to discontinue its business, and to wind up its affairs, sell its good will, and distribute its assets. In August following the agreement, an action was brought by the Attorney General to dissolve the mercantile company, on the ground that it was insolvent, and the action resulted in a judgment to that effect, and the appointment of plaintiff as receiver. Thereupon the defendant served a notice upon this plaintiff, rescinding

the contract on the ground of alleged misrepresentation and breach of conditions, and disclaiming all liability thereunder, and stating that it held the books and papers of the mercantile company subject to the receiver's orders. The misrepresentations as disclosed by the answer, were with respect to the mercantile company having done a profitable business, and that it was solvent and able to pay its creditors and policy holders in case of loss, leaving a substantial surplus for distribution amongst its stockholders, and one of the breaches of condition complained of is, that the mercantile company failed to continue in existence, and permitted itself to become insolvent, and thus discredited the business of insuring accounts. The right to rescind was disputed, and after the expiration of the two years provided by the contract, this action was brought to recover 5 per cent. of the gross premiums received by the defendant upon policies issued by it during that period, to persons holding policies in the mercantile company at the time the contract was entered into, together with $500 claimed to have been agreed to be paid, as well as a small printing bill. The amount which plaintiff was entitled to recover, if he was entitled to recover at all, was conceded to be $6,216.27, and the trial resulted in the direction of a verdict for plaintiff for that amount.

The defendant urges that the agreement, although in writing and signed by the parties, was void under the statute of frauds, principally because a list of the present policy holders of the mercantile company was referred to as annexed, when, in fact, it was not annexed, but was furnished by the mercantile company to the defendant as a separate paper, and hence that the agreement signed was not an entire one, and was insufficient in respect to the identification of the subject-matter. The provision with respect to the annexed list occurs in that part of the contract providing that the defendant should pay 5 per cent. of its gross premiums received upon all policies issued or renewed within the two years specified, to the then policy holders of the mercantile company. The provision is, policies issued or renewed "to any of the persons named in the list hereto annexed, being a list of all policies of the Mercantile Credit Guarantee Company now in force." The written contract makes it quite plain that the intention of the parties was that 5 per cent. of the gross premiums received from all policies issued to or renewed by the present policy holders of the mercantile company, should be paid for the transfer of the good will and the turning over to the defendant of the books and papers of that company, relating to such policies. The obligations and mutual promises of the parties are specifically and plainly stated. Where the language of an instrument is such as to warrant the inference that the consideration rests upon mutual promises, the writing satisfies all the requirements of the statute of frauds. Seymour v. Warren, 179 N. Y. 1, 71 N. E. 260.

The contract would have been complete if it had simply provided that the percentage should be paid upon all policies which might be issued or renewed to the then policy holders of the mercantile company. Resort in such case could be had to the books or policies for the purpose of ascertaining who such persons were. While a memorandum, to satisfy the statute of frauds, must contain what is necessary to show

the contract between the parties, the property mentioned in it may be ascertained and located by extrinsic evidence, especially where the memorandum refers thereto. Tallman v. Franklin, 14 N. Y. 584; Browne on Statute of Frauds (4th Ed.) § 385.

The list was made and delivered and accepted, and we do not think the failure to annex it destroyed the signed contract, or made it ineffectual as a memorandum and satisfying the statute of frauds. The defendant further insists that the contract entered into by the mercantile company was illegal and void, in that it agreed to abandon the business for which it was incorporated, and to transfer that business to a foreign corporation, thus divesting itself of its lawful functions, which it had no right to do, and that the contract was beyond the power of the directors, and ultra vires. The agreement did not provide for the turning over to the defendant of all the assets of the mercantile company, and the corporation did not thereby divest itself of all of its property, and hence it did not bring itself within the rule which the appellant seeks to invoke. Whether the contract was ultra vires or not, it was fully performed by the mercantile company, and the defendant had the full benefit of it by obtaining a list of all of its policy holders and reinsuring a very large proportion of them.

After such performance and the acceptance of the benefits thereof, the defendant is estopped from interposing the defense that the corporation had no power to make such a contract. Vought v. Eastern Building & Loan Association, 177 N. Y. 550, 69 N. E. 1132; Booth Bros. v. Baird, 83 App. Div. 500, 82 N. Y. Supp. 432; Bath Gas Light Company v. Claffy, 151 N. Y. 35, 45 N. E. 390, 36 L. R. A. 664; Seymour v. S. F. C. Association, 144 N. Y. 341, 39 N. E. 365, 26 L. R. A. 859. It is insisted that the case of Gilbert v. Finch, 72 App. Div. 38, 76 N. Y. Supp. 143, decided by this court and affirmed by the Court of Appeals, 173 N. Y. 455, 66 N. E. 133, 61 L. R. A. 807, 93 Am. St. Rep. 623, controls the question here involved. That action was quite different from the present one. There it was sought to charge the directors with waste of the corporate funds in entering into an improvident contract. Here, the corporation having had the benefits of a performed contract, is estopped from denying that the corporation with which it contracted, had no power to make the contract. It would appear that the defendant entered into the contract in expectation that its business would be profitably increased by taking over a very large share of the policy holders of the mercantile company, and that expectation seems to have been fairly realized, so far as obtaining the reinsurance. It is not so specified in the contract, but the defendant says that there was an implied agreement that the mercantile company should remain solvent, so that discredit should not be thrown upon the class of insurance in which it was engaged; and that because within a few months after the agreement was made, it was declared insolvent in a suit brought by the people, the defendant's action in repudiating the contract was justified, and that, at least, it should not pay any percentage on premiums received after the judgment of insolvency.

We think this position cannot be sustained. The defendant was given fair notice by the recitals of the agreement that the mercantile

company expected to wind up its affairs, and the fact that those affairs were wound up sooner than was expected, or in a different way, did not make a breach of the contract, especially, in view of the fact that prior to that time the defendant had obtained all the benefit which could arise to it, by obtaining a list of all the policy holders and a solicitation to them that they should reinsure with it. The plaintiff proved his cause of action to the amount for which the verdict was directed, and there appears to have been no error in the manner in which the proof was made.

The defendant made many objections to the receipt and rejection of evidence; but, in the view of the case which we have taken, none of the exceptions, we think, are sufficient to call for a reversal of the judgment.

One exception should perhaps be referred to. The affidavit of defendant's manager to a list of policies issued by defendant during the two years specified in the contract, together with the amount of premium paid, was admitted in evidence over the defendant's objection. It appears, however, that this list was furnished in pursuance of a stipulation in the action, which required that it should be verified. Presumably, this list was to be used on the trial for defendant's manager was then under an order of examination. The admission of the affidavit, therefore, did no harm, even if it was technically not admissible as part of the list. The defendant complains that the court did not permit it to go to the jury after the verdict for the plaintiff had been directed, and points out that there was dispute with respect to a printing bill of $14.20, and also as to whether or not defendant's manager accepted a single list of policy holders in place of a duplicate and corrected list which he demanded. Both parties moved for a direction of verdict. The defendant moved first, and its motion was denied. Thereupon the plaintiff moved, and his motion was granted; and after verdict had been thus directed in favor of plaintiff, and before it was rendered, defendant asked to go to the jury upon the whole case without specifying any particular questions of fact which it desired should be submitted. There being several questions of fact involved, the defendant should have pointed out what particular ones it claimed there was dispute concerning, and should have asked that the jury be permitted to pass upon them instead of requesting to go to the jury upon the whole case and all the issues.

Where, at the close of the evidence on the trial of an action in which more than one question of fact is involved, each party asks that a verdict be directed in his favor, and after the decision thereon the unsuccessful party asks that the case be sent to the jury, without stating any question of fact he desires submitted, a denial of the motion is not error. Mayer v. Dean, 115 N. Y. 556, 22 N. E. 261, 5 L. R. A. 540; Flandreau v. Elsworth, 151 N. Y. 473, 481, 45 N. E. 853; Campbell v. Prague, 6 App. Div. 561, 39 N. Y. Supp. 558. This rule, with the qualification as to more than one fact being involved, is a substantial restatement of the one laid down in Mayer v. Dean, supra; but it is claimed that the later decisions of Second National Bank v. Weston, 161 N. Y. 520, 55 N. E. 1080, 76 Am. St. Rep. 283, and Cullinan v. Furthmann, 70 App. Div. 110, 75 N. Y. Supp. 90,

and Eldridge v. Matthews, 93 App. Div. 356, 87 N. Y. Supp. 652, have modified it, and that the present rule is less stringent. By reference to these cases it will be observed that in Second National Bank v. Weston, only the defendant moved for a direction of verdict, and that, in the other two cases, specific questions were pointed out upon which it was asked that the jury should pass. In Bernheimer v. Adams, 70 App. Div. 116, 75 N. Y. Supp. 93, the rule which we have stated was substantially enunciated and approved by this court. Nor is there any occasion to restrict or abrogate this rule of procedure, for it is founded on reason and fairness. Each party in moving for a verdict, assumes from his point of view, that there is no dispute as to the facts. When the court adopts the view of the one, the other should, in fairness to the court and to his adversary, point out any question which he deems disputed by the evidence and proper for the jury to pass upon. To this extent only should he be permitted to change the attitude assumed by him when he made his own motion for a verdict, that there was no disputed fact requiring solution by the jury.

The two questions of fact which the defendant now attempts to raise, do not impress us as having much merit; but whether they are meritorious or not, they should have been pointed out to the trial court, and the defendant should have asked specifically that they be submitted to the jury, and he having failed to do so, the ruling was not error.

The judgment and order should be affirmed, with costs. All concur except McLAUGHLIN, J., who dissents.

McLAUGHLIN, J. (dissenting). If the directors of the defendant corporation had, at the time the contract was made, paid out of its funds to the Mercantile Credit Guarantee Company, the amount for which a recovery has been had, and an action had been brought against them by the defendant corporation to recover such sum, on the ground that the contract was ultra vires, and the payment a waste of its funds, I do not see why they would not have been liable, under Gilbert v. Finch, 72 App. Div. 38, 76 N. Y. Supp. 143, affirmed 173 N. Y. 455, 66 N. E. 133, 61 L. R. A. 807, 93 Am. St. Rep. 623. The contract under which payment was made by the directors in Gilbert v. Finch, supra, was similar to the one here under consideration, except that a gross sum was there paid at the time the contract was made, while here the amount to be paid was to be determined at the expiration of two years. The object sought to be accomplished by each was the same, viz., the acquisition of business by the corporation paying the consideration, and in each case it is undoubtedly true that by the contract some new business was acquired.

Under the authority, therefore, of Gilbert v. Finch, supra, I am unable to concur in the prevailing opinion that the judgment should be affirmed. I, however, concur in the prevailing opinion, in as far as it holds that the trial court did not err in denying defendant's motion to submit the case to the jury.