O'BRIEN, P. J., INGRAHAM, LAUGHLIN and CLARKE, JJ., concurred.

Judgment and order reversed, new trial ordered, costs to appellant to abide event.

---

JOHN M. BOWERS, as Receiver of the MERCANTILE CREDIT GUARANTEE COMPANY OF NEW YORK, Respondent, v. OCEAN ACCIDENT AND GUARANTEE CORPORATION, LIMITED, Appellant.

First Department, January 26, 1906.

Sale — sale of good will of insurance company — when not void under Statute of Frauds — when defense of ultra vires not available — when agreement of corporation to remain solvent not implied — when affidavit of manager of corporation admissible — when not error to direct verdict if both parties move therefor — request to go to jury.

When a mercantile credit guaranty corporation has entered into a contract with a corporation of a similar nature to sell its good will and to turn over a list of its policies then in force, the vendee to pay the vendor a commission on the premiums received on such policies, and such contract is in writing save that the list of policies therein referred to as annexed was not annexed but fur-

nished to the vendee as a separate writing, the contract is not void under the Statute of Frauds, as it would have been complete without such list, which could have been shown by extrinsic evidence.

In an action by the receiver of the vendor to recover such commissions, the defense that the contract was *ultra vires* in that the corporation agreed to abandon its business and transfer the same to a foreign corporation and thus divest itself of its lawful functions, is not tenable when the contract has been fully performed by the vendor and the vendee has had the benefit thereof as the defendant corporation is then estopped from claiming it had no power to make the contract.

Nor is it a defense to say that there was an implied contract that the vendor should remain solvent so that no discredit should be thrown on the kind of insurance engaged in, for the contract was notice that the vendor would wind up its affairs. And when the vendee has had the benefit of such contract, it is immaterial that the vendor's insolvency was declared in a suit by the People.

The affidavit of the vendee's manager to the list of policies issued by the vendee pursuant to the contract is admissible when the same was furnished under a stipulation requiring such list to be verified.

When both parties move for the direction of a verdict and several issues are involved, a party who wishes to go to the jury on any issue must state which of the issues he wishes submitted. If he fail to do so, the denial of a general motion to go to the jury is not error.

Policy of the rule stated.

McLAUGHLIN, J., dissented, with memorandum.

APPEAL by the defendant, the Ocean Accident and Guarantee Corporation, Limited, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 28th day of April, 1905, upon the verdict of a jury rendered by direction of the court after a trial at the New York Trial Term, and also from an order entered in said clerk's office on the 27th day of April, 1905, denying the defendant's motion for a new trial made upon the minutes.

*Laurence Arnold Tanzer*, for the appellant.

*W. H. Van Benschoten*, for the respondent.

HOUGHTON, J:

The Mercantile Credit Guarantee Company, engaged in the business of insuring merchants against bad debts, on the 23d of March, 1897, entered into a contract with the defendant, in writing, dated the sixteenth day of that month, whereby it agreed to and did sell to the defendant its good will, and agreed to turn over to it a list of

all policies then in force, and such books pertaining thereto as the defendant might from time to time require, and to do all in its power to induce its present policyholders to insure in the defendant company which was engaged in business of a like character. As consideration therefor the defendant agreed to pay to the Mercantile Company five per cent of the gross premiums received upon all policies issued by it within two years from the date of the agreement to any of the then policyholders of the Mercantile Company. A list of the existing policyholders of the Mercantile Company was furnished to the defendant's representative, and policy ledgers and other books and papers pertaining to such policies were delivered to the defendant. Notice was given, as provided by the contract, to the policyholders of the Mercantile Company that its business had been turned over to the defendant, and urging continuance of insurance with it.

The agreement recited that the Mercantile Company was about to discontinue its business and to wind up its affairs, sell its good will and distribute its assets.

In August following the agreement an action was brought by the Attorney-General to dissolve the Mercantile Company on the ground that it was insolvent, and the action resulted in a judgment to that effect and the appointment of plaintiff as receiver.

Thereupon the defendant served a notice upon this plaintiff rescinding the contract on the ground of alleged misrepresentation and breach of conditions, and disclaiming all liability thereunder, and stating that it held the books and papers of the Mercantile Company subject to the receiver's orders.

The misrepresentations as disclosed by the answer were with respect to the Mercantile Company having done a profitable business, and that it was solvent and able to pay its creditors and policyholders in case of loss, leaving a substantial surplus for distribution amongst its stockholders, and one of the breaches of condition complained of is, that the Mercantile Company failed to continue in existence and permitted itself to become insolvent, and thus discredited the business of insuring accounts.

The right to rescind was disputed, and after the expiration of the two years provided by the contract this action was brought to recover five per cent of the gross premiums received by the defend-

ant upon policies issued by it during that period to persons holding policies in the Mercantile Company at the time the contract was entered into, together with $500 claimed to have been agreed to be paid, as well as a small printing bill.

The amount which plaintiff was entitled to recover, if he was entitled to recover at all, was conceded to be $6,216.27, and the trial resulted in the direction of a verdict for plaintiff for that amount.

The defendant urges that the agreement, although in writing and signed by the parties, was void under the Statute of Frauds (2 R. S. 135, § 2, as amd. by Laws of 1863, chap. 464, and revised in Pers. Prop. Law [Laws of 1897, chap. 417], § 21), principally because a list of the present policyholders of the Mercantile Company was referred to as annexed when in fact it was not annexed, but was furnished by the Mercantile Company to the defendant as a separate paper and, hence, that the agreement signed was not an entire one and was insufficient in respect to the identification of the subject-matter.

The provision with respect to the annexed list occurs in that part of the contract providing that the defendant should pay five per cent of its gross premiums received upon all policies issued or renewed within the two years specified to the then policyholders the Mercantile Company. The provision is, policies issued or renewed "to any of the persons named in the list hereto annexed, being a list of all policies of the Mercantile Credit Guarantee Company now in force." The written contract makes it quite plain that the intention of the parties was that five per cent of the gross premiums received from all policies issued to or renewed by the present policyholders of the Mercantile Company should be paid for the transfer of the good will and the turning over to the defendant of the books and papers of that company relating to such policies.

The obligations and mutual promises of the parties are specifically and plainly stated. Where the language of an instrument is such as to warrant the inference that the consideration rests upon mutual promises, the writing satisfies all the requirements of the Statute of Frauds. (*Seymour* v. *Warren*, 179 N. Y. 1.)

The contract would have been complete if it had simply pro-

vided that the percentage should be paid upon all policies which might be issued or renewed to the then policyholders of the Mercantile Company. Resort in such case could be had to the books or policies for the purpose of ascertaining who such persons were. While a memorandum, to satisfy the Statute of Frauds, must contain what is necessary to show the contract between the parties, the property mentioned in it may be ascertained and located by extrinsic evidence, especially where the memorandum refers thereto. (*Tallman* v. *Franklin*, 14 N. Y. 584; Browne Stat. Frauds [4th ed.], § 385.)

The list was made and delivered and accepted, and we do not think the failure to annex it destroyed the signed contract or made it ineffectual as a memorandum satisfying the Statute of Frauds.

The defendant further insists that the contract entered into by the Mercantile Company was illegal and void in that it agreed to abandon the business for which it was incorporated, and to transfer that business to a foreign corporation, thus divesting itself of its lawful functions, which it had no right to do, and that the contract was beyond the power of the directors and *ultra vires*.

The agreement did not provide for the turning over to the defendant of all the assets of the Mercantile Company, and the corporation did not thereby divest itself of all of its property, and hence it did not bring itself within the rule which the appellant seeks to invoke. Whether the contract was *ultra vires* or not, it was fully performed by the Mercantile Company, and the defendant had the full benefit of it by obtaining a list of all of its policyholders and reinsuring a very large proportion of them. After such performance and the acceptance of the benefits thereof, the defendant is estopped from interposing the defense that the corporation had no power to make such a contract. (*Vought* v. *Eastern Building & Loan Association*, 172 N. Y. 508; *Booth Brothers* v. *Baird*, 83 App. Div. 500; *Bath Gas Light Co.* v. *Claffy*, 151 N. Y. 35; *Seymour* v. *S. F. C. Association*, 144 id. 341.)

It is insisted that the case of *Gilbert* v. *Finch* (72 App. Div. 38), decided by this court and affirmed by the Court of Appeals (173 N. Y. 455), controls the question here involved. That action was quite different from the present one. There it was sought to charge the directors with waste of the corporate funds in entering into an

improvident contract.   Here, the corporation, having had the benefits of a performed contract, is estopped from denying that the corporation with which it contracted had no power to make the contract.   It would appear that the defendant entered into the contract in expectation that its business would be profitably increased by taking over a very large share of the policyholders of the Mercantile Company, and that expectation seems to have been fairly realized so far as obtaining the reinsurance.

It is not so specified in the contract, but the defendant says that there was an implied agreement that the Mercantile Company should remain solvent so that discredit should not be thrown upon the class of insurance in which it was engaged; and that because within a few months after the agreement was made it was declared insolvent in a suit brought by the People, the defendant's action in repudiating the contract was justified, and that at least it should not pay any percentage on premiums received after the judgment of insolvency.

We think this position cannot be sustained.   The defendant was given fair notice by the recitals of the agreement that the Mercantile Company expected to wind up its affairs, and the fact that those affairs were wound up sooner than was expected or in a different way did not make a breach of the contract, especially in view of the fact that prior to that time the defendant had obtained all the benefit which could arise to it by obtaining a list of all the policyholders and a solicitation to them that they should reinsure with it.

The plaintiff proved his cause of action to the amount for which the verdict was directed, and there appears to have been no error in the manner in which the proof was made.

The defendant made many objections to the receipt and rejection of evidence, but in the view of the case which we have taken none of the exceptions, we think, is sufficient to call for a reversal of the judgment.

One exception should perhaps be referred to.   The affidavit of defendant's manager to a list of policies issued by defendant during the two years specified in the contract, together with the amount of premium paid, was admitted in evidence over the defendant's objection.   It appears, however, that this list was furnished in pursuance of a stipulation in the action which required that it should be verified.   Presumably, this list was to be used on the trial for defend-

ant's manager was then under an order of examination. The admission of the affidavit, therefore, did no harm even if it was technically not admissible as part of the list.

The defendant complains that the court did not permit it to go to the jury after the verdict for the plaintiff had been directed, and points out that there was dispute with respect to a printing bill of fourteen dollars and twenty cents, and also as to whether or not defendant's manager accepted a single list of policyholders in place of a duplicate and corrected list which he demanded.

Both parties moved for a direction of verdict. The defendant moved first and its motion was denied. Thereupon the plaintiff moved and his motion was granted, and after verdict had been thus directed in favor of plaintiff and before it was rendered defendant asked to go to the jury upon the whole case without specifying any particular questions of fact which it desired should be submitted. There being several questions of fact involved the defendant should have pointed out what particular ones it claimed there was dispute concerning and should have asked that the jury be permitted to pass upon them instead of requesting to go to the jury upon the whole case and all the issues.

Where, at the close of the evidence on the trial of an action in which more than one question of fact is involved, each party asks that a verdict be directed in his favor, and after the decision thereon the unsuccessful party asks that the case be sent to the jury without stating any question of fact he desires submitted, a denial of the motion is not error. (*Mayer* v. *Dean,* 115 N. Y. 556; *Flandreau* v. *Elsworth,* 151 id. 473, 481; *Campbell* v. *Prague,* 6 App. Div. 561.)

This rule, with the qualification as to more than one fact being involved, is a substantial restatement of the one laid down in *Mayer* v. *Dean (supra)*; but it is claimed that the later decisions of *Second National Bank* v. *Weston* (161 N. Y. 520) and *Cullinan* v. *Furthmann* (70 App. Div. 110) and *Eldredge* v. *Mathews* (93 id. 356) have modified it, and that the present rule is less stringent. By reference to these cases it will be observed that in *Second National Bank* v. *Weston (supra)* only the defendant moved for a direction of verdict, and that in the other two cases specific questions were pointed out upon which it was asked that the jury should pass.

In *Bernheimer* v. *Adams* (70 App. Div. 116) the rule which we have stated was substantially enunciated and approved by this court. Nor is there any occasion to restrict or abrogate this rule of procedure, for it is founded on reason and fairness. Each party, in moving for a verdict, assumes from his point of view that there is no dispute as to the facts. When the court adopts the view of the one, the other should, in fairness to the court and to his adversary, point out any question which he deems disputed by the evidence and proper for the jury to pass upon. To this extent only should he be permitted to change the attitude assumed by him when he made his own motion for a verdict, that there was no disputed fact requiring solution by the jury.

The two questions of fact which the defendant now attempts to raise do not impress us as having much merit; but whether they are meritorious or not, they should have been pointed out to the trial court, and the defendant should have asked specifically that they be submitted to the jury, and he having failed to do so, the ruling was not error.

The judgment and order should be affirmed, with costs.

O'BRIEN, P. J., INGRAHAM, and LAUGHLIN, JJ., concurred; McLAUGHLIN, J., dissented.

McLAUGHLIN, J. (dissenting):

If the directors of the defendant corporation had, at the time the contract was made, paid out of its funds to the Mercantile Credit Guarantee Company the amount for which a recovery has been had, and an action had been brought against them by the defendant corporation to recover such sum, on the ground that the contract was *ultra vires* and the payment a waste of its funds, I do not see why they would not have been liable under *Gilbert* v. *Finch* (72 App. Div. 38; affd., 173 N. Y. 455).

The contract under which payment was made by the directors in *Gilbert* v. *Finch* (*supra*) was similar to the one here under consideration, except that a gross sum was there paid at the time the contract was made, while here the amount to be paid was to be determined at the expiration of two years. The object sought to be accomplished by each was the same, viz., the acquisition of business by the corporation paying the consideration, and in each case it is

undoubtedly true that by the contract some new business was acquired.

Under the authority, therefore, of *Gilbert* v. *Finch* (*supra*) I am unable to concur in the prevailing opinion that the judgment should be affirmed. I, however, concur in the prevailing opinion in so far as it holds that the trial court did not err in denying defendant's motion to submit the case to the jury.

Judgment and order affirmed, with costs.