GEORGE R. DYER et al., Appellants, *v.* BROADWAY CENTRAL BANK, Respondent.

(Argued December 2, 1929; decided January 7, 1930.)

*Nathan L. Miller, John Godfrey Saxe* and *H. Bartow Farr* for appellants. The transaction is not illegal or *ultra vires.*

(*Bath Gas Light Co.* v. *Claffy,* 151 N. Y. 24; Langston & Whitney on Banking Practice, 309; Kniffen on Commercial Banking 511; Fiske on The Modern Bank, 154; *Bendell* v. *De Dominicis,* 251 N. Y. 305; *Conklin* v. *Raymond,* 127 App. Div. 663; *Central Nat. Bank* v. *White,* 139 N. Y. 631.)

*Joseph J. Corn* for respondent. The enumeration of the powers and functions specified in the Banking Law prohibits the exercise by a bank of all other powers or functions. A contract involving the exercise of any such prohibited power or function is *ultra vires,* illegal, contrary to public policy, and unenforceable. (*Pratt* v. *Short,* 79 N. Y. 440; *Nassau Bank* v. *Jones,* 95 N. Y. 115; *Gause* v. *Commonwealth Trust Co.,* 196 N. Y. 134; *Jemison* v. *Citizens' Sav. Bank,* 122 N. Y. 135; *California Bank* v. *Kennedy,* 167 U. S. 362; *Concord Nat. Bank* v. *Hawkins,* 174 U. S. 364; *First Nat. Bank* v. *Nat. Exch. Bank,* 92 U. S. 122; *Barron* v. *McKinnon,* 196 Fed. Rep. 933; *Leslie* v. *Lorillard,* 110 N. Y. 519; *People ex rel. Peabody* v. *Goldfogle,* 213 App. Div. 710; 242 N. Y. 543.) Since the amended complaint shows on its face that the transactions in suit are against public policy, illegal and *ultra vires,* it was properly dismissed. (*Sirkin* v. *Fourteenth Street Store,* 124 App. Div. 384; *Sayres* v. *Decker Automobile Co.,* 239 N. Y. 73; *Sprague* v. *Webb,* 168 App. Div. 292; *Bank of Salina* v. *Alvord,* 31 N. Y. 473; *Dunham* v. *Hastings Pavement Co.,* 56 App. Div. 244; 118 App. Div. 127; 189 N. Y. 500; *Drake* v. *Lauer,* 93 App. Div. 86; 182 N. Y. 533; *Barry* v. *Mulhall,* 162 App. Div. 749; *Chard* v. *Ryan-Parker Co.,* 182 App. Div. 455; *Appleton* v. *Citizens' Cent. Nat. Bank,* 116 App. Div. 404; 119 App. Div. 889; *Topken, Loring & Schwartz, Inc.,* v. *Schwartz,* 249 N. Y. 206; *Oscanyan* v. *Arms Co.,* 103 U. S. 261; *Dresser* v. *Traders Nat. Bank,* 165 Mass. 120; *Wood & Selick Co.* v. *Ball,* 190 N. Y. 217; *Welsbach Co.* v. *Norwich G. & E. Co.,* 180 N. Y. 533.)

Hubbs, J. The plaintiffs are stockbrokers, engaged in business in the city of New York. The defendant is a banking corporation organized under the laws of this State. The plaintiffs purchased certain stocks for the defendant upon its order. The original complaint alleged that the purchases were made " for and on account of the defendant." The defendant moved to dismiss the complaint for insufficiency. The motion was denied. The Appellate Division reversed the order and dismissed the complaint, but granted to plaintiffs permission to amend. (130 Misc. Rep. 842; 225 App. Div. 366.) Thereafter the complaint was amended so as to read that " the plaintiffs, as brokers, at the request of the defendant, and on its promise to pay therefor immediately on delivery," purchased the stocks ordered, that thereafter the plaintiffs delivered part of the stocks and the defendant paid therefor, and that the defendant refused to accept and pay for the balance of the stocks. This action is to recover the loss sustained by the plaintiffs because of the defendant's breach of contract. The amended complaint was dismissed at Special Term upon motion before answer, and the order was affirmed by the Appellate Division. The basis of the decision, as stated by the Appellate Division, upon the first appeal, was that the complaint upon its face stated an illegal and void transaction.

The question for determination in this court, as stated by the learned counsel for the appellant, is " May a bank in this state ever, under any circumstances, order the purchase of common stock from a stock exchange house, rendering itself liable as principal to its brokers for the purchase price? "

Upon a motion to dismiss a complaint upon the ground that it does not state facts sufficient to constitute a cause of action " every intendment and fair inference is in favor of the pleading." (*Madole* v. *Gavin*, 215 App. Div. 299; *Marie* v. *Garrison*, 83 N. Y. 14, 23.) If in any aspect

upon the facts stated the plaintiff is entitled to a recovery, the motion should be denied.

The position of the respondent is that the complaint herein discloses absolutely and undisputably that the transaction is not only *ultra vires* but illegal and void, in contravention of public policy and the statutes of the State governing banking corporations.

It is well known that many depositors in banks deal directly with their banks in making purchases of stocks on the stock exchange. In fact, it is a matter of common knowledge and has been so recognized by this court. (*Central Nat. Bank* v. *White*, 139 N. Y. 631; *LeMarchant* v. *Moore*, 150 N. Y. 209, 215.) So far as we are advised, the Superintendent of Banks in this State has never raised any objection to that extensive practice. In determining this case, we should not close our minds to the well-known fact that the banking business in this country has developed rapidly during the last few years to meet the ever-growing demands of business. Banks *ex necessitate* have been required to extend their functions and perform services formerly foreign to the banking business. Courts have taken cognizance of that fact in passing upon cases involving questions of banking law. (*American Surety Co.* v. *Philippine Nat. Bank*, 245 N. Y. 116, 127.) We are not called upon to decide whether a State bank can legally for its own account purchase and hold common stocks as a permanent investment of its capital. That question is not present on this appeal. Undoubtedly there is no express provision of the statute authorizing a State bank to purchase certificates of stock except the particular stocks specified in the statutes. (Banking Law, § 106, subds. 3, 4 and 5; Cons. Laws, ch. 2.)

The position of the respondent is that the enumeration in the statute of specified powers prohibits the exercise of all other powers and functions and that a contract involving the exercise of any power or function not

expressly conferred upon a bank by statute is necessarily illegal and unenforceable. The public policy of the State, expressed in statutes and judicial decisions, has treated banking as a business involving elements of trust and confidence. The State has limited the field of activities of banks and prescribed limitations upon the nature of their investments in an endeavor to make them and keep them financially safe and sound. Courts should be zealous to maintain the standards of safety which have been demonstrated to be essential for the continued safety of such institutions. On the other hand, care should be exercised not to cripple them and break down their usefulness by a narrow and unreasonable construction of the statutes which will result in unwisely limiting their usefulness in the transaction of business under modern conditions. (*Whiting* v. *Hudson Trust Co.*, 234 N. Y. 394, 406.)

Section 106 of the Banking Law defines the general powers of banks, which are " in addition to the powers conferred by the general and stock corporation laws." Subdivision 1 grants to banks the power of loaning " money on real or personal security; " also " all such incidental powers as shall be necessary to carry on the business of banking." Subdivision 7 grants the power " to receive * * * upon deposit for safe-keeping * * * stocks " and other valuable securities. Section 13, subdivision 1, of the General Corporation Law (Cons. Laws, ch. 23) provides: " A corporation shall not possess or exercise any powers unless given by law, or necessary to the powers so given." Under the express provisions of the statute a bank may lawfully receive certificates of stock from its customers for safekeeping. It may also receive certificates of stock as collateral to loans. Under certain conditions it may be quite necessary for a bank to replace stock which has been lost by it or improperly disposed of. Under such circumstances it seems clear that the bank would be authorized to contract for the

purchase of stocks to replace those lost or disposed of. The power to make such a contract would be among the "incidental powers * * * necessary * * * to carry on the business of banking." Doubtless other illustrations of the right of a bank to make a valid contract to purchase stocks could be given. These are sufficient for the purpose of conveying our view that not all contracts made by a bank for the purchase of stocks are necessarily unenforceable.

Whether such a contract is enforceable must depend upon the facts and circumstances under which the contract is made. It cannot be determined upon a motion to dismiss a complaint.

The learned counsel for the respondent has cited cases in the Federal courts to sustain his contention that all contracts by banks to purchase stock are void. Those cases were decided under the doctrine of *ultra vires* in all its severity as enforced in the Federal courts. Under the rule followed by the Federal courts, an *ultra vires* contract is void, not merely voidable. This court has adopted a more liberal rule, holding that not all *ultra vires* contracts are void, but that some are voidable only, and that a corporation which seeks to avoid such a contract must plead the facts entitling it to do so. (*American Surety Co.* v. *Philippine Nat. Bank, supra; Appleton* v. *Citizens' Central Nat. Bank,* 190 N. Y. 417; *Gordon Malting Co.* v. *Bartels Brewing Co.,* 206 N. Y. 528.)

The respondent relies upon the following cases in this State to sustain its contention that the complaint herein disclosed upon its face a void and illegal agreement: *Pratt* v. *Short* (79 N. Y. 437, 440); *Nassau Bank* v. *Jones* (95 N. Y. 115); *Gause* v. *Commonwealth Trust Co.* (196 N. Y. 134); *Jemison* v. *Citizens' Savings Bank* (122 N. Y. 135); *People ex rel. Peabody, Houghteling & Co., Inc.,* v. *Goldfogle* (213 App. Div. 710; affd., 242 N. Y. 543). None of those cases arose upon a demurrer or motion to dismiss a complaint upon the ground that it did not state facts

sufficient to constitute a cause of action. That question was not considered in any of those cases and they do not sustain the respondent's contention. The *Jemison* case decided that the defendant, a savings bank, upon the facts elicited at the trial, could not lawfully enter into a speculative contract for a short sale of cotton futures upon margin to be held for the bank's account, the bank by the contract becoming the broker's debtor. That is far from holding that the complaint herein does not, under any circumstances, state a valid cause of action.

It is urged by the appellant that a bank has authority to purchase stock for its depositors as an "incidental power * * * necessary * * * to carry on the business of banking." This court has recognized the fact that banks have engaged in such transactions. (*LeMarchant* v. *Moore, supra; Central Nat. Bank* v. *White, supra.*)

Those cases, at least impliedly, recognized that a purchase of stock by a bank might be lawful. (See, also, *People ex rel. Pratt* v. *Goldfogle,* 242 N. Y. 277, 295.)

As the only question before us is the sufficiency of the complaint, we deem it advisable to limit our decision to that question. The judgment of the Appellate Division and that of the Special Term should be reversed, with costs in this court and in the Appellate Division and the motion to dismiss the complaint denied, with ten dollars costs.

CARDOZO, Ch. J., POUND, CRANE, LEHMAN, KELLOGG and O'BRIEN, JJ., concur.

Judgments reversed, etc.